## HUFFMAN v. COOLEY et al.

Where, at the time defendant C. purchased an Indian allotment, complainant was in possession and was farming the land under a lease from the Indian allottee, approved by the Indian Department and the Secretary of the Interior, which had not expired, and C.'s husband, who represented her in making the purchase, on several

occasions observed that there was a crop growing on the land, and that teams and persons were working thereon putting in and caring for the crop, C. and her lessee were charged with knowledge of all the facts which she might have learned by inquiry as to complainant's rights and possession, and therefore purchased subject to complainant's rights under the lease, though it was not recorded.

While possession of land is in itself prima facie sufficient notice of the possessor's rights, whether it is actually known to the adverse party or not, such presumptive notice, like that arising from any fact putting one on inquiry, may be rebutted by proof showing that an inquiry duly and reasonably made failed to disclose any legal or equitable title in the occupant.

Where a third person is in possession of land, failure of a purchaser to make due and reasonable inquiry as to his rights is regarded as an intentional avoidance of the truth which it would have disclosed, depriving the purchaser of his character of a bona fide purchaser.

Any appropriate acts of occupancy, openly and notoriously done, are sufficient to put one on inquiry as to the possessor's rights in the land occupied.

Complainant was in open and active possession and held a valid unrecorded and unexpired lease of an Indian allotment at the time it was purchased by defendant C. from the Indian allottee with notice of complainant's rights. Defendants went on the land, plowed and seeded a portion, claimed the crops grown thereon, and intended to carry them away. C. leased the land to defendant B., to whom complainant gave immediate warning to quit, but without effect. **Held,** that complainant was in and entitled to the exclusive possession of the whole of the leased premises, not as a mere "scrambling" possessor, but under a valid lease; that defendants were trespassers; and that complainant was entitled to an injunction to protect his possession and crops, and was not restricted to an action for damages.

(Opinion filed, January 17, 1912.)

Appeal from Circuit Court, Roberts County. Hon. FRANK McNULTY, Judge.

Suit by Charles Huffman against Mary E. Cooley and another. Decree for complainant, and defendants appeal. Affirmed.

*J. J. Batterton,* for appellants. *E. J. Turner* and *Fuller & Fuller,* for respondent.

McCOY, J. . In this equity case findings of fact and judgment were made and rendered in favor of defendants. Plaintiff moved for new trial, which motion was granted, and defendants appeal,

urging as error that the trial court erred in granting a new trial and setting aside and vacating the report of the referee and judgment. It is the contention of appellants that the evidence submitted on the trial was wholly insufficient to warrant the court in granting plaintiff the relief by injunction prayed for in the complaint, and that therefore the court erred in granting a new trial and in vacating the judgment of dismissal upon the merits. We are of the opinion that appellants' contention is not well founded.

·[1] The allegations of the complaint in this action are sufficiently broad to warrant equitable relief by injunction upon two grounds: First, for threatened carrying away of and interference with crops grown on the premises in question. Second, for interfering with the free use and enjoyment of leased premises thereby tending in part to destroy plaintiff's leasehold estate. It will serve no useful purpose to further refer to the pleadings. It appears that one Mireau, a Sisseton Indian, was in possession of an Indian allotment quarter section of land, under the laws of the United States. The Department of the Interior has long recognized the right of the Indian to lease his allotted lands, providing it is done by and with the consent and approval of the Indian Department and the Secretary of the Interior. It appears from the evidence in this case that this Indian so leased his allotment quarter section of land to plaintiff for the period of three years from February 20, 1908, by a written instrument duly consented to and approved by the Indian Department and Secretary of the Interior, and which instrument entitled plaintiff to the exclusive possession and enjoyment of the use of said land for three years from said date, as against said Indian, Mireau, and all others claiming under him with notice; the said lease never having been recorded. It appears that in May, 1908, plaintiff entered into the possession of said leased premises under and by virtue of the said lease, and farmed said land during the season of 1908, raised a crop of flax thereon, which flax was stacked and in bunches on said land, and on September 9, 1908, plaintiff moved a threshing machine on said premises and was engaged in threshing said flax on the 10th day of September, and for some days thereafter. On the 10th day of September, 1908, the defendant Mary E. Cooley, by and

through her agent, John A. Cooley, legally purchased said leased land from Mireau, and thereafter leased the same to the defendant Bickford for the season of 1909; that the said John A. Cooley during the summer of 1908, prior to the purchase by him of said land for the defendant Mary E. Cooley, observed upon several occasions that there was a crop growing upon said land, and that teams and persons were working thereon putting in and caring for said crop. John A. Cooley, himself, testified that he saw the land in controversy frequently, that he owned land in 1908 adjoining .the same, and was there to see the crops and noticed the crop on the land in question, saw teams working and putting in the crop in the springtime, but never made any inquiry of the Indian, Mireau, if the land was leased; knew some one was farming the land in question during the year 1908, but made no inquiry as to who it was.

Under this state of facts, the defendants were as fully and well notified of plaintiff's rights and leasehold title under said lease as if said lease had been duly recorded, and any entry, or attempted entry, on said premises by defendants, under the deed by the Indian, Mireau, to defendant Cooley, delivered on September 10, 1908, was in violation and destruction of the plaintiff's leasehold right. Defendant Cooley, prior to the making and delivery of the deed to her, was in possession of knowledge which put her upon inquiry as to the plaintiff's rights under said lease, and defendant Cooley was thereby put upon inquiry concerning the grounds and reasons of plaintiff's occupation, and is presumed to have knowledge of all the facts she might have learned by means of an inquiry duly and reasonably made. Betts v. Letcher, 1 S. D. 182; 46 N. W. 193; Bliss v. Waterbury, 131 N. W. 731; Pomeroy's ·Eq. Jurisprudence, §§ 614, 615; Gale v. Shillock, 4 Dak. 182, 29 N. W. 661.

[2] Prima facie, the possession is of itself sufficient notice, whether it is actually known to the other party or not; but the presumptive notice from possession, like that arising from any fact putting one upon inquiry, is subject to rebuttal by proof showing that an inquiry duly and reasonably made failed to dis-

close any legal or equitable title in the occupant. Betts v. Letcher, supra; Riley v. Quigley, 50 Ill. 304, 99 Am. Dec. 516; Fair v. Stuvenot, 29 Cal. 486; Williamson v. Brown, 15 N. Y. 354.

[3] A failure to make such inquiry, however, is regarded as an intentional avoidance of the truth, which it would have disclosed; and voluntary ignorance, under such circumstances, effectually deprives the subsequent party of the character of a bona fide purchaser. Betts v. Letcher, supra; Thompson v. Pioche, 44 Cal. 508.

[4] Any appropriate acts of occupancy openly and notoriously done are sufficient to put one upon inquiry. Clearing an acre of land out of 60 acres of timbered land, and renting it to a person residing on an adjoining tract, who cultivates it—growing and cutting willows on land every year for basket making—running a plowed furrow around a tract of prairie land, is sufficient. Betts v. Letcher, supra; Wickes v. Lake, 25 Wis. 71; Banner v. Ward (C. C.) 21 Fed. 820; Buck v. Holt, 74 Iowa, 294, 37 N. W. 377. Actual possession entitles the occupant to the same rights he would acquire by the recording of the instrument under which he claims. Higgins v. White, 118 Ill. 619, 8 N. E. 808; Banner v. Ward, supra; Nolan v. Grant, 51 Iowa, 519, 1 N. W. 709. One in actual possession of a part of a tract of land is in legal possession of the whole covered by the title under which the actual possession is taken. Nolan v. Grant, supra; Gale v. Shillock, supra; Richie v. Owsley, 137 Ky. 63, 121 S. W. 1015.

[5] Plaintiff was in, and entitled to, the exclusive possession of the whole of said leased premises, and the entry of defendant had the effect of excluding plaintiff from and interfering with his use and occupation of a portion of said premises under said lease, independent of the question of carrying away crops grown thereon. The acts of defendants in going upon said lands and plowing and seeding the same and making claim to the crops grown thereon by defendants was excluding plaintiff from his rights under his lease, and amounted to a destruction of his leasehold interest, which defendants had no lawful right to do.

Under the circumstances of this case, defendants were willful and malicious trespassers and could acquire no title to the grain

grown by them on this land in violation of plaintiff's rights. They could not gain any advantage by virtue of their own wrong. While there may be a lack of evidence in this case to justify an injunction for carrying away or attempted and threatened carrying away of crops grown by plaintiff on said leased land, there is ample evidence to justify the inference that defendants intended to carry away the grain grown on the ground by defendants. The very fact that defendants plowed and sowed the land is sufficient to show they intended to remove that portion of the crop. The testimony shows that defendant Cooley employed one Asplund to plow on this land in the fall of 1908, and that plaintiff, when he discovered him plowing there, went to Asplund and inquired of him what he was doing there, and he said Cooley had him there; that plaintiff told Asplund that he had a lease on the land and that he did not want Cooley plowing there; that plaintiff endeavored to find Cooley, but could not find him; that he went to Bassett's place to see him, where he had been informed he was staying; that he made many inquiries for Cooley, but was unable to find him. Plaintiff also informed defendant Bickford, prior to his acquiring any interest therein, of his lease, and that he claimed the land under the lease, and he was informed that Cooley considered plaintiff's lease no good. The plain import of this testimony is that plaintiff was at all times objecting to the entry of defendants on this land. He may not have expressed his objection in the same manner as would have a technical practitioner at the bar; but nevertheless he was at all times telling them that he was insisting on his rights under his lease, and that he did not want Cooley to plow there. In order to protect his legal right, he was not required to drive them off with gun or bludgeon; neither was plaintiff required to fly into court with a lawsuit, in order to protect himself against the claim that he was guilty of laches, after he had thus notified defendants of his rights under the lease and that he did not want Cooley to plow on the land. Another plain import of this testimony is that defendants were interfering with the occupancy, enjoyment, and use of, and crowding plaintiff off, and excluding him from, this land with the intent

of evading and destroying his leasehold estate, because they considered his lease no good.

Under these circumstances, we are of the opinion that plaintiff was entitled to an injunction restraining defendants from interfering with his use and occupancy under said lease by means of said repeated trespasses, regardless of the question of the carrying off of the grain. The defendants were wrongdoers at all times, attempting to wrongfully oust plaintiff from a rightful possession. The plaintiff was right at all times in seeking to maintain his possession; and the principle that he who comes into a court of equity must do so with clean hands has no possible application to plaintiff. A lessee has such an interest as entitles him to an injunction to prevent irreparable injury to his leasehold estate. 22 Cyc. 818; Miller v. Dry Goods Co., 62 Neb. 270, 86 N. W. 1078. A tenant, like a landlord, is not necessarily restricted to an action for damages against one interfering with his possession or enjoyment, but may, in a proper case, obtain an injunction against such interference. Tiffany, Landlord & Tenant, p. 2128. An interference by the lessor, or another, with the possession or enjoyment of the premises by the lessee, may be restrained by injunction. Joyce on Injunctions, § 1251; Gaffey v. Northwestern Insurance Co., 71 Neb. 304, 98 N. W. 862. In principle this case last cited is very similar to the case at bar. In that case Gaffey was in possession under an unrecorded oral lease when the insurance company purchased from the landlord of Gaffey. The company attempted to exclude Gaffey, and an action was commenced by the company to restrain Gaffey, in which Gaffey set up a counter complaint and prayed for a permanent injunction against the plaintiff company restraining it from interfering with his possession. The trial court made findings and entered judgment for plaintiff restraining Gaffey from maintaining possession under his lease, from which judgment Gaffey appealed. The judgment of the lower court was reversed, and an injunction directed on Gaffey's counterclaim in his favor upon the findings. The trial court found that Gaffey was in possession

under a valid oral lease at the time the insurance company purchased from the landlord, and that under this finding a judgment for plaintiff could not stand. In the case at bar the referee should have found that plaintiff was in possession, at the time of the transfer of title by Mireau to Cooley, under a valid unrecorded lease, of which Cooley had notice of facts sufficient to put her upon inquiry as to plaintiff's rights under said lease. The finding of the referee that the lease was not recorded and that Cooley had no notice thereof was wrong, in not being supported by the evidence, and being against the evidence. Plaintiff on his motion for new trial sufficiently attacked this finding of the referee on the ground that the evidence was insufficient, and, also, that the same was against the evidence.

Under the evidence plaintiff was entitled to an injunction restraining defendants from interfering with his possession under his lease. Irreparable injury, of course, must be shown to entitle a tenant to an injunction for interfering with the leased premises. Repeated and continuing trespasses, constantly recurring, constituting a wrongful invasion of plaintiff's right, furnish proper cause, and injunction will lie to restrain such trespasses, both on the ground that the remedy at law by suit for damages is inadequate, and to prevent a repetition or multiplicity of suits, especially when the trespasses are committed by different persons. 22 Cyc. 836. Every day and every time that Asplund or Bickford went upon this land was a separate and distinct trespass for which plaintiff might have maintained the action of trespass quare clausum against either of them. Defendants having plowed and planted, it is fair to presume they intended to enter again to harvest. It is fair to presume they would have continued such trespassing in 1909 and on until the termination of plaintiff's lease. The entries of defendants of the land in question did not constitute what is termed a "scrambling" possession, where two trespassers or two persons with equal rights "scramble" for the possession of real property; but the entry of defendants, under the circumstances shown, constituted a willful and malicious wrong and invasion of plaintiff's leasehold right or estate, with the intent

to exclude and harass plaintiff in the enjoyment of his lawful right. Under a "scrambling" possession each party is treated as being in possession of the portion of the tract of land actually occupied by each; but in this case, plaintiff, under his lease, was at all times rightfully in possession of the whole of the tract covered by his lease. Nolan v. Grant, supra; Gale v. Shillock, supra; Richie v. Owsley, 137 Ky. 63, 121 S. W. 1015.

It is immaterial whether defendants ever produced a pound of crop on this land. It is the unlawful and wrongful interference with and exclusion of plaintiff from the leased premises, his loss of crops to be raised by himself in the use and enjoyment of the whole premises, the nuisance of having his possession thus interfered with, that warrants the relief by injunction, and for which damages would not be adequate or just compensation. There are numerous cases holding that a tenant may maintain injunction against one interfering with his enjoyment and use of the leased premises by closing his way of ingress or egress, by interfering with his right to light or water, thereby creating nuisances which will be restrained by the court. What greater nuisance could exist against an agricultural tenant than to have strangers constantly plowing and planting where the tenant himself intended to plow and plant for his own use and purposes? The equities in this case are on the side of plaintiff, and plaintiff offered ample proof to justify a judgment in his favor restraining defendants from interfering with his use and enjoyment of the leased premises. The allegations of the complaint are sufficient to warrant a judgment for plaintiff for obstructing and interfering with his free use of the leased premises, independent of the question of crops. We are of the opinion the trial court was right and committed no error in granting the new trial. The granting of this new trial was in the discretion of the trial court, and the order granting the same should not be reversed, except where it is shown that the discretion was abused. This cause should be retried in the circuit court.

Finding no error in the record, the judgment and order appealed from is affirmed.

WHITING, J. (dissenting). I am unable to agree with the conclusions reached by my colleagues, and, in order that the reasons for my dissent may be clear, I make the following state-ment in relation to what appears from the record herein:

The plaintiff, among other things, alleged that the defendant did forcibly, and by means of threats, prevent the plaintiff from putting in a crop on a portion of said land; that, during spring of 1908, in spite of plaintiff's demand and notice to vacate said prem-ises, defendant prevented plaintiff from attending to and caring for his crops on said land; that defendant threatens to and will forcibly evict plaintiff from said land and harvest and remove the plaintiff's growing crops; and that defendant Bickford is insolv-ent. Upon the sworn complaint, plaintiff obtained a restraining order, restraining the defendant from in any way entering upon or interfering with plaintiff's possession of the land and crop during the pendency of this action. It is clear that, under the allegations of the complaint, the plaintiff was entitled to the relief prayed for. This action was tried before a referee, who reported findings of fact and conclusions of law herein; the same being favorable to the defendant. These findings and conclusions were adopted by the trial court, and such trial court did right in adopting the findings of the referee, unless such findings were clearly against the evidence received. After the trial court had adopted the find-ings and conclusions, and had entered judgment in accordance therewith, it granted plaintiff's motion for a new trial. Plaintiff offered no evidence whatever to establish a single one of the allegations above referred to, and plaintiff sought no finding on either of these matters, all of which had been denied by the de-fendant. Taking the evidence and giving it the construction most favorable to plaintiff, and it would appear: Plaintiff had a valid lease entitling him to the possession and use of this land for the season of 1909, of which lease defendant Cooley had constructive notice. Defendant Cooley, with no actual notice of such lease, purchased the land in question and received a deed thereto, after-ward maintaining (though in error in so doing) that her right under her deed was superior to any right of plaintiff under his

lease. She had some of the land plowed in the fall of 1908. Plaintiff objected to the plowing being done by defendant's servant, and was advised that defendant Cooley considered plaintiff's lease of no value. In the spring of 1909 the plaintiff and Bickford, as lessee of defendant Cooley, each sowed a part of this land to crop. Plaintiff never consented to defendant's sowing the land, but it does not appear that he ever forbade defendants cropping same before bringing this action, which was brought just prior to harvest time in 1909.

The question before us is not merely which one's right in this land was superior, nor whether plaintiff was entitled to recover damages against the defendants, but whether, under the facts proven, the referee was right in denying a permanent injunction, and the trial court wrong in granting a new trial. If plaintiff had proven the facts as alleged in his complaint, he certainly would have been entitled to the relief prayed for; but if, under the evidence herein, plaintiff is entitled to such relief, then, whenever two persons shall honestly differ as to which one is entitled to crop certain land, and both enter thereon, each in good faith cropping part thereof, the one who has the superior right has only to remain quiet until the land has been properly tilled and the crop ready for harvesting, when he may come into court, disregarding his ample legal remedies, and get an order restraining the other party from removing said crop, and himself remove not only what he has sown, but that sown by the other party. To me this seems anything but equity. It would seem rather that this is a case wherein there well may be applied the equitable principles that: "He who comes into equity must do so with clean hands." "He who seeks equity must do equity." And, "Equity aids the vigilant, not the indolent." In the words of the learned Chief Justice of Minnesota as found in Marks v. Jones, 71 Minn. 136, 73 N. W. 719, we would reverse the order of the trial court "upon the broad ground that the admitted facts do not show any superior equity entitling the plaintiff to the injunction asked as against the defendant. To grant an injunction restraining the defendant from removing or disposing of any portion of the crops would, in view of admitted facts, be inequitable, and oppressive to the defendant."