STROM et al., Respondents, v. BUHOLZ et al., Appellants

(46 N. W.2d 912)

(File No. 9166. Opinion filed March 26, 1951)

**McFarland & Patterson**, Watertown, for Appellants.

**Hanten, Henrikson & Manson** and **H. O. Norbeck**, all of Watertown, for Respondents.

SICKEL, J. This is an action brought by Joseph H. Strom and Helga M. Strom, his wife, as plaintiffs, against Mabel Buholz and Dora F. Williams, defendants, for the specific performance of an option for the purchase of a tract of land on the south shore of Lake Kampeska. The circuit

court entered judgment requiring that defendants execute and deliver to plaintiffs a warranty deed to the property and for costs, and the defendants appealed.

On March 25, 1925, a lease was entered into between Maggie E. Williams, then owner of the land, and H. H. Sand, for a term of ten years at an annual rental of twenty dollars. In 1931 respondents acquired the cottage situated on the land and went into possession. The lease was renewed by agreement between Maggie E. Williams and Joseph H. Strom, one of the palintiffs, for a term of seven years from April 1st, 1933. The lease was again renewed by agreement dated Februray 8, 1940, between Maggie E. Williams, lessor, and Joseph H. Strom and Helga M. Strom, lessees, for a term of ten years from April 1st, 1940. All of the leases are in substantially the same form.

It also appears that on June 16, 1937, Maggie E. Williams executed a deed of conveyance describing this plot of ground, which deed names Mabel Buholz and Dora F. Williams, appellants, as grantees. After the execution of this deed the grantor placed it in possession of George Williams, her son, who retained it until after the death of the grantor September 18, 1940. The deed was recorded on September 24, 1940.

An option to purchase land, contained in a lease, is a covenant which runs with the reversion, and as such it is binding upon the transferee of the reversion, though the lease is assignable only with the consent of the lessor. The option may be enforced in equity by the lessee against the lessor's transferee of the reversion, provided the transferee has actual or constructive notice of the option. 32 Am.Jur., Landlord and Tenant, § 304.

The appellants were the transferees of the reversion. Strom, the tenant, was in possession of the property under his lease from 1931 until the death of the lessor and has remained in possession ever since. The possession of the tenant was notice to appellants of the rights of the lessee under his lease and of the purchase option contained therein. Huffman v. Cooley, 28 S.D. 475, 134 N.W. 49; Phillis v. Gross, 32 S.D. 438, 143 N.W. 373.

Appellants admit the signature of the decedent to the contract but contend that she was a person entirely without understanding or without the mental capacity to make a contract of any kind at the time the one in question was executed. This was denied by respondents. The circuit court found that at the time of the execution of the lease decedent "was not entirely without understanding to understand the terms and provisions of said lease, and that she did understand such lease and the terms and provisions thereof, including said option agreement at the time she signed the same."

██ Respondents also allege in their reply that on or about March 17, 1941, after the death of Maggie E. Williams, respondents paid to appellants the annual rent as it became due which rents were accepted by the appellants without objection, and that the appellants thereby ratified, confirmed and approved the lease and all its terms, including the option. The circuit court found that appellants had notice and knowledge of the lease of February 8, 1940, and its terms from and after the death of Maggie E. Williams and with such knowledge continued to accept all the rents so paid, and considered the lease as being in full force and effect without rescinding or attempting to cancel the instrument. It is provided by SDC 10.0324: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting." This statute is a declaration of the equity rule which prevents the party benefited from questioning the validity and effectiveness of a matter or transaction insofar as it imposes a liability or obligation upon him. It precludes one who accepts the benefit from repudiating the accompanying obligations. The rule in effect denies the right to assume inconsistent positions and is based on the principle of election and ratification, 19 Am.Jur., Estoppel, § 64; First Nat. Bank of Yankton v. Wagner, 51 S.D. 225, 213 N.W. 3. The existence of the instrument, possession by respondents and acceptance of rents according to the lease over a term of nearly nine years precludes the appellants from repudiating the obligation which was imposed upon them by lessees'

acceptance of the option to purchase the property. In view of this conclusion it is unnecessary to consider the issue of lessor's mental capacity.

■ Appellants also claim that there was no consideration for the option. The general rule is stated in 51 C.J.S., Landlord and Tenant, § 81c, as follows: "* * * the agreement to pay rent or do other acts, and the fulfillment of such obligations on the part of the lessee, will support the option [to purchase] as well as the right to occupy under the lease." The above text is generally supported by the authorities.

Another assignment of error is to the effect that the description of the land as contained in the lease is so indefinite and uncertain that specific performance may not be decreed. In support of this assignment appellants cite Hollenbeck v. Prior, 5 Dak. 298, 40 N.W. 347, 348. The opinion in that case adopts the following rule: "if the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy." The opinion continues: "But if the vendor and vendee were to select the number of acres, and separate them from the remainder, and the purchaser were permitted to enter into the same, make improvements thereon, and to hold possession, the contract would thereby be so far executed as to remove the uncertainty, and a court of equity would compel the execution of a deed."

■ In 51 C.J.S., Landlord and Tenant, § 81c, the rule is stated as follows: "Any description of the land by which it may be readily identified will be sufficient. If from the words employed the description of the land can be made certain by evidence aliunde it will be sufficient, and the maxim 'That is certain which can be made certain,' is applicable in any controversy as to acreage."

The case of Nowicki v. Kapelczak, 195 Mich. 678, 162 N.W. 266, 267, was an action for specific performance. The lease containing the option to buy described the property as the premises situated at No. 1086 Chene street, corner of Frederick in Detroit. It was held that the description was

sufficient to cover lot 8, Charles Chene's subdivision of out-lot 19, subdivision of Chene farm. "It was not necessary to describe them by the lot number on the plat; a description by street number is sufficient to identify them."

Another case is House v. Jackson, 24 Or. 89, 32 P. 1027, 1029. This was an action for specific performance. The lease contained an option to purchase and described the land as the Jackson Ranch on Sauvies Island according to deeds, containing two hundred and eighty-seven acres. The court followed the rule that: "* * * any description by which the property might be identified by a competent surveyor with reasonable certainty, either with or without the aid of extrinsic evidence, is sufficient."

■ The last lease describes the land as that part of Section 29, Township 117 North, Range 53, Codington County on which is situated the house and buildings known as Cottage No. 39 at Stony Point and land immediately adjacent to said buildings. The consideration for the purchase is fixed at twenty dollars per front foot facing the lake shore. The south boundary is the road. The east and west boundaries are marked by woven wire fences erected by respondent Joseph H. Strom, and C. M. Williams, then husband of Maggie E. Williams, before the lease here involved was executed and while a previous lease was in effect, for the purpose of preventing others from trespassing upon his property. The fences do not run to the lake shore which is public property, but reach to the high water mark. According to this evidence the north boundary is the lake shore. The south boundary is the road, and the east and west boundaries are marked by woven wire fences. The property has been sufficiently identified to support the decree for specific performance.

■ It is further contended that no proper tender of the consideration for the purchase of the real estate has been made. The evidence shows that the appellants refused to convey the property as they were obligated to do upon the exercise of the option. This refusal dispenses with the necessity of a tender by the purchasers and entitled them to specific performance on proof of their own willingness and

ability to perform their obligations under the contract. Boekelheide v. Snyder, 71 S.D. 470, 26 N.W.2d 74. The necessary proof of the purchasers' willingness and ability to perform the contract was introduced at the trial.

Judgment affirmed.