**In re Patricia H. GRIDLEY, Debtor.**

**Bankruptcy No. 91–40439–PKE.**

United States Bankruptcy Court,
D. South Dakota, S.D.

Dec. 31, 1992.

See also 131 B.R. 447.

James A. Craig, Craig & Nichols, P.C., Sioux Falls, SD, Chapter 7 Trustee, pro se, for Estate of Patricia H. Gridley, debtor.

Edward J. Leahy, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for Principal Creditor Valley Bank.

David L. Nadolski, Quaintance, Johnson, Nadolski & Starnes, Sioux Falls, SD, for claimant Pamela G. Jaudes.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is the Chapter 7 Trustee's objection to a proof of claim filed against this bankruptcy estate. Pamela G. Jaudes, Debtor's daughter [hereinafter Claimant], claims three loans, used to aid her father's financially troubled insurance business, were made at the joint

request and for the joint benefit of both her parents, "thereby creating a joint obligation of repayment" from her mother's bankruptcy estate. Claimant contends the obligation exists not because of any particular instruments executed in association with the three loans, but, rather, because of a statutory obligation created by S.D.C.L. § 53-3-5, which states, "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting."

In the alternative, Claimant seeks an order directing payment of the obligation to be made out of proceeds from the sale of joint property based upon the contention that Debtor either expressly or impliedly authorized her spouse to act as her agent for the purpose of obtaining the three loans, actions which Debtor subsequently ratified by accepting the benefits rendered from the financially improved insurance business.

In sum, Claimant believes it is equity that makes this claim equal among all other unsecured debts involved in this bankruptcy case.

The Chapter 7 Trustee, Sioux Falls Attorney James A. Craig, seeks to disallow the claim for several reasons: first, there is no evidence that Debtor is indebted to Claimant, only evidence that Debtor's spouse is obligated to repay the claimed amount; second, the Statute of Frauds bars the claim; third, testimony shows that Debtor and spouse were estranged and Debtor made great efforts to separate her business affairs from those of her spouse, and as an immediate family member, Claimant knew or should have known Debtor would not accept responsibility for repaying loans used by her husband; and fourth, even if Debtor should be responsible for this claim, it should be limited to the

value of Debtor's spouse's interest in the property of the bankruptcy estate.

Valley Bank, the principal creditor in this bankruptcy, also objects to the proof of claim and for similar reasons. A brief in opposition to Pamela G. Jaudes' proof of claim was filed on behalf of Valley Bank by Sioux Falls Attorney Edward J. Leahy.

After an evidentiary hearing, the Court took the matter under advisement. The issue to be determined is whether a joint obligation of repayment is created between a debtor and spouse which would permit a claimant's proof of claim to be allowed against a bankruptcy estate when loan transactions orally arranged between the parties are immediately and subsequently reduced to written contracts drafted by the claimant using unambiguous terms that bind only the spouse and not the debtor and are executed on behalf of the spouse's financially troubled business, but when the claimant contends the debtor indirectly benefited from money loaned to rehabilitate the business.

The parties were given opportunities to file briefs and responses. The issue presented in this case is a core proceeding under 28 U.S.C. § 157(b)(2), and this Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL AND PROCEDURAL BACKGROUND

Claimant provided three separate loans, "at the request of both parents," totaling $60,792.35.[1] On June 17, 1991, Claimant's mother filed this voluntary Chapter 7 bankruptcy petition, and two days later, passed away. On June 27, 1991, the Chapter 7 Trustee "cleaned out"[2] the contents of Debtor's home and shortly thereafter noticed a proposed sale of property. Objec-

---

1. In March, 1982, a loan was made in the amount of $9,042.35; in March, 1983, two loans were made: one for $15,000, and a second for $36,750.

2. Without notice or warning to Debtor's widower, the Chapter 7 Trustee, acting upon a "tip" from a close family member regarding a poten-

tial "unexplained loss or disappearance" of Debtor's personal property, entered Debtor's home, accompanied by local law enforcement and an auctioneer, and after closing the door to the widower's bedroom, proceeded to remove the entire contents of Debtor's home.

tions to the proposed action were filed by Debtor's spouse and Claimant inasmuch as joint property had been taken from the home. A lengthy hearing was held concerning the personal property, which resulted in an order dated November 4, 1991, wherein the Court stated that if Debtor's family members could not reach a settlement agreement as to ownership of the personal property seized by the Trustee, the personal property would be deemed part of the bankruptcy estate and sold so sale proceeds could be applied to the joint debts of Debtor and Debtor's spouse.

Based on this order, Claimant utilizes alternative theories of recovery to claim Debtor's bankruptcy estate is obligated to repay the loans. The first theory, pursuant to S.D.C.L. § 53-3-5, is that Debtor should not be allowed to deny the obligation of repayment when she voluntarily accepted the "direct or indirect" benefits of her spouse's business. Claimant advances her theory using the following rationale:

It is undisputable that the money was used either directly for the support of Patricia H. Gridley or indirectly for her support through an attempt to keep John N. Gridley, Jr.'s business going.... In short and in accordance with the old adage, as went John Gridley & Associates, so went the lifestyle of Patricia H. Gridley.

The alternative theory looks to the *sui generis* law of agency and asserts Debtor expressly or impliedly created an agency relationship with her spouse for the purpose of consummating the three loan transactions and then subsequently ratified her agent's actions by voluntarily accepting the benefits from her spouse's financially improved business.

Although Claimant repeatedly insists the estate's obligation "does not arise out of any particular promissory note," copies of promissory notes relating to the three loan

transactions are attached to the proof of claim, one for each loan transaction.[3] Except for the dollar amounts specified, the language of the two-paragraph notes are the same, beginning with, "On demand for value received, the undersigned, John N. Gridley, Jr., doing business as JOHN GRIDLEY & ASSOCIATES, promises to pay Pamela Jaudes...." All three notes were executed by Claimant's father on behalf of the business entity, "Gridley & Associates."

The Trustee filed an objection[4] urging the Court to deny the claim since the accompanying promissory notes do not refer to Debtor, do not bind Debtor, nor require or contain Debtor's signature. This evidence signifies not only Debtor's lack of indebtedness to Claimant, but also implies the claim is invalid under the Statute of Frauds. The six-year Statute of Limitations is also raised in defense of the claim, inasmuch as the loans occurred in the early 1980's and Claimant made no demand for repayment until 1992. The Trustee also indicates that circumstances specific to these parties support the objection. Previous testimony in these bankruptcy proceedings indicates Debtor was estranged from her spouse and took "great pains to completely separate her business affairs from those of her husband, whom she blamed for dissipating not only his own inheritance, but much of her inheritance as well." For these reasons, the Trustee urges the Court to refuse the proof of claim.

The major secured creditor in this bankruptcy case, Valley Bank, voiced its objection with similar arguments. In addition, Valley Bank ripostes Claimant's "direct or indirect benefits" argument by stating that if the language of S.D.C.L. § 53-3-5 was intended to obligate Debtor's repayment, then

---

3. The promissory notes correspond to each of the three loans: the first note is dated March 1, 1982, in the amount $9,042.35; the second and third are both dated March 21, 1983, and are in the amounts of $15,000 and $36,750, respectively.

4. An Amended Trustee's Objection to Proof of Claim #3 Pamela G. Jaudes was subsequently filed, adding that any liability on behalf of the bankruptcy estate for this claim should be limited to the value of Debtor's spouse's interest in the personal property seized by the Trustee. That value was stated to be $9,128.

the spouse of every businessman or businesswoman will be the joint obligor for the business' debts merely because the spouse receives an indirect benefit by virtue of being married to the owner of the business. In fact, based upon the logic of her [Claimant's] argument, the children of a business owner should be joint obligors of the business debts for the same reason. Obviously, such a result would be ludicrous.

## ALLOWING PROOFS OF CLAIMS

■ Section 502(b) of the Bankruptcy Code provides for the allowance of claims or interests against a bankruptcy estate. A proof of claim filed pursuant to Section 502 is a legal document submitted to the court, giving notice that a creditor is asserting some right to payment from the estate. *United States v. Connery*, 867 F.2d 929, 934 (6th Cir.1989). A properly executed proof of claim constitutes prima facie evidence of its validity, and parties objecting to a claim bear the burden of going forward to "meet, overcome, or, at minimum, equalize the valid claim." *In re Dakota Industries, Inc.*, 131 B.R. 437, 444 (Bankr.D.S.D.1991). *See also In re Stoecker*, 143 B.R. 118, 129 (Bankr.N.D.Ill.1992); 11 U.S.C. § 502(a); Fed.R.Bankr.P. 3001. Once an objection is made and the burden of overcoming the claim is met, the ultimate burden of persuasion always rests on the claimant, a posture similar to a plaintiff in a nonbankruptcy civil matter. *Id.; In re Carol Janet Koch*, 83 B.R. 898 (Bankr. E.D.Pa.1988); *In re Minnesota Kick, Inc.*, 48 B.R. 93 (Bankr.D.Minn.1985); *In re Farmer's Co-op of Arkansas & Oklahoma, Inc.*, 43 B.R. 619, 620 (Bankr. W.D.Ark.1984).

■ In formulating an objection to a properly filed proof of claim, the trustee is given the benefit of any defense applicable law, including state law, would afford the debtor as a defense against the claim. 3 L. King, *Collier on Bankruptcy* ¶ 502.02, at 502–24.1 (15th ed. 1992). Fraud, lack of consideration, the Statute of Limitations, or the Statute of Frauds are a trustee's basis for urging disallowance of a claim. *Id.;* 11 U.S.C. § 558.

■ Once an objection is made, the court must determine how much of the claim will be allowed, but to the extent that a claim is unenforceable against a debtor and a debtor's property "under any agreement or applicable law for a reason other than because such claim is contingent or unmatured," such claim is not allowed. 11 U.S.C. § 502(b)(1). In making its determination, the court must look to the appropriate governing substantive law. *In re Ford*, 125 B.R. 735, 737 (E.D.Tex.1991); *Lindermuth v. Myers*, 84 B.R. 164, 166 (D.S.D.1988); *In re William Duncan & Son*, 165 F.Supp. 159, 160 (N.D.Cal.1958); 3 L. King, *Collier on Bankruptcy* ¶ 502.02, at 502–28 (15th ed. 1992). In this case, South Dakota law is appropriately examined. Statutory provisions that govern the formation of and obligations arising from agreements, contracts, and contractual relationships must be the basis for determining whether Section 502 of the Bankruptcy Code will permit this claim to be allowed.

But applying substantive state law provisions is only part of the claim determination process. Because Claimant contends Debtor "knew or ought to have known" about the facts of the loan transactions, a circumstance tantamount to Debtor's consent to repayment, the question whether S.D.C.L. § 53–3–5 was designed to apply to the facts of this case must be answered by considering all the facts and circumstances surrounding the transactions and the parties connected therewith. *In re Ralph*, 293 F. 903, 905 (D.Minn.1923).

## THE COMPETING ARGUMENTS

In response to Claimant's "acceptance of benefits" theory under S.D.C.L. § 53–3–5, the Trustee and Valley Bank couple the "totality of circumstances" approach with two statutory provisions to deny the estate is under the statutory obligation of S.D.C.L. § 53–3–5. The first is the Statute of Frauds. According to the text of S.D.C.L. § 53–8–2(4), an agreement for a loan of money is not enforceable "unless the contract or some memorandum thereof

is in writing and subscribed by the party to be charged or his agent, as authorized in writing." The objection is that since no written agreement exists to bind Debtor, the bankruptcy estate is under no obligation to honor the claim. In response, however, Claimant notes that even if the Statute of Frauds is applicable, the elements of the Doctrine of Equitable Estoppel have been met to act as an exception to S.D.C.L. § 53–8–2(4). *Farmers Elevator Co. of Elk Point v. Lyle*, 90 S.D. 86, 238 N.W.2d 290 (1976); *Federal Land Bank of Omaha v. Matson*, 68 S.D. 538, 5 N.W.2d 314 (1942). The second provision, the Statute of Limitations, states "an action upon a contract, obligation, or liability, express or implied," may only be commenced "within six years after the cause of action shall have accrued." S.D.C.L. § 15–12–13. The objecting parties insist the cause of action arose at the time the loans were made, i.e., March, 1982, and March, 1983. Claimant maintains that because the three loan transactions were reduced to demand notes, the cause of action did not begin to accrue until March, 1991, the time when the formal proof of claim was filed.

The agency argument is founded on S.D.C.L. § 59–1–1, *et seq.* Claimant concedes that mere marital status does not create an agency relationship; however, "under certain circumstances an individual's conduct or want of ordinary care can cause a third person to believe that yet another person was acting on that individual's behalf." Because Debtor "personally participated" in the loan transactions or, at the very least, "knew that her husband was obtaining loans ... for their mutual benefit," Debtor expressly or impliedly authorized her husband to act on her behalf. Responsively, the objecting parties state that this theory is just a variation of the "direct or indirect" benefits argument sought to be won under S.D.C.L. § 53–3–5, and it is illogical to contend Debtor used her husband as an agent when the written contracts correlating to the loans were signed by Debtor's spouse acting on behalf of his insurance business. The objecting parties simply believe there is no evidence to support the finding of an actual or ostensible agency relationship between Debtor and Debtor's spouse.

## DISCUSSION

### *The Proof of Claim*

■ One of the circumstances concerning this dispute is the fact that the three loan transactions involve close family members. Of course, family members have a fundamental right to make loans of money to each other and, having done so, have a perfect right to file a claim in the bankruptcy estate and "participate in the dividends properly allowed." *In re McClelland*, 275 F. 576, 580 (S.D.Cal.1920). A claim involving transactions among close family members neither increases nor diminishes the claimant's rights. *Id.; In re Thorsen*, 282 F. 888, 889 (D.Colo.1922).

■ Nonetheless, a claim arising from loan transactions between close family members "very naturally justif[ies] unusual care and scrutiny in examination as to its genuineness...." *In re McClelland*, 275 F. at 580. The *McClelland* court agreed with the referee's conclusion that the bankruptcy court has a duty "to scrutinize with extreme care such claims, and to examine the details at length before allowing them," but reversed the lower court's decision to disallow the claim when it found there was nothing contradicting the sworn oral statements of the sister who filed a claim against her brother's bankruptcy estate for loans not corroborated in writing. *Id.* at 579, 582. Other courts have also concluded that it is common sense to require a somewhat heightened level of consideration in such situations: "The fact that ... a creditor of an insolvent debtor is a relative or intimate friend is doubtless calculated to excite suspicion...." *In re H. Hicks & Son*, 10 F.Supp. 684, 686 (S.D.N.Y.1935); *In re Thorsen*, 282 F. at 889. Therefore, because transactions between close family members form the foundation for this claim, the Court must carefully scrutinize the claim.

### *The Promissory Notes and the Statute of Frauds*

■ Another important aspect surrounding this claim is the three promissory notes

attached to the proof of claim. Claimant states the only reason the notes are attached to the proof of claim is to show that Claimant's father acquiesced in his responsibility to repay. The Court, however, gives the written agreements slightly heftier evidentiary consideration.

Claimant, the only party available to testify about the loan transactions,[5] indicates the first loan request was made orally during a telephone conversation. Shortly thereafter, Claimant drafted the first promissory note dated March 1, 1982, in the amount of $9,042.35, which she then presented to her father for execution. Claimant also indicates the two subsequent loan transactions were similar in extent and nature to the first.

Based on these unadorned facts, the Court concludes the oral telephone conversations were preliminary to the final, written expressions Claimant generated. Even if there were some oral agreements between the parties, it is apparent Claimant did not rely on them, inasmuch as she immediately drafted written contracts. "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." S.D.C.L. § 53–8–4; *Eggers v. Eggers*, 79 S.D. 233, 110 N.W.2d 339 (1961); *Clark v. Bergen*, 75 S.D. 48, 59 N.W.2d 250 (1953); *Thompson v. Dakota Independent Oil Co.*, 67 S.D. 27, 288 N.W. 148 (1939); *Janssen v. Tusha*, 66 S.D. 604, 287 N.W. 501 (1939); *Stoefen v. Brooks*, 66 S.D. 587, 287 N.W. 330 (1939); *Schriner v. Dickinson*, 20 S.D. 433, 107 N.W. 536 (1906). Had the parties truly intended Debtor to be jointly obligated, Claimant, as the drafting party, had ample opportunity to modify the notes and include Debtor. S.D.C.L. § 53–8–6; S.D.C.L. § 57A–3–119. Such action was never taken. As is, the three promissory notes are valid, inasmuch as the binding parties are clearly identified—and Debtor is not one of the parties. S.D.C.L. § 53–2–3.

Without question, however, the law *does* require an agreement for a loan of money to be in writing. S.D.C.L. § 53–8–2(4). And the simple fact is that these loan agreements were put in writing, but Debtor was never required to subscribe to them nor did she provide written authorization that her spouse would be authorized to subscribe to them on her behalf. S.D.C.L. § 59–2–3. Further, even though Debtor was aware of the loans and participated in the arrangements, Claimant's own subsequent actions confirm Debtor is not liable for repayment. "No person is liable on an instrument unless his signature appears thereon." S.D.C.L. § 57A–3–401.

### Equitable Estoppel

Claimant avers that even if the Statute of Frauds does apply, the proof of claim is still tenable due to the Doctrine of Equitable Estoppel, which "may prevent a party to an oral agreement from invoking the Statute of Frauds." *Federal Land Bank of Omaha v. Matson*, 5 N.W.2d at 315. Invoking equitable estoppel requires a party to meet three elements:

1. The oral agreement must be established by satisfactory evidence;

2. The party asserting rights under the agreement must have relied on the agreement; and

3. It must appear that because the party changed position and relied on the agreement, application of the Statute of Frauds would subject the party to unquestionable hardship and loss.

*Id.*

There is insufficient evidence in this case to show that an oral repayment agreement was made or intended to be made between Debtor and Claimant. The oral telephone conversation(s) transpired between spouses at one household with spouses of another household. The subject of the conversation(s) was a loan(s) to assist Gridley & Associates. That is the extent of the testimony. Nothing was presented to show

---

**5.** Claimant's father, John N. Gridley, Jr., died prior to the evidentiary hearing on objections to the proof of claim. Claimant's husband, the

remaining party to the telephone conversation(s), is an attorney residing in the State of Texas and was not present at the hearing.

that the parties agreed Debtor would repay the loans or would be jointly responsible for repayment. There is no evidence Debtor received and controlled the funds pursuant to any oral agreement. There is no evidence that specific repayment terms were orally agreed upon. Rather, the evidence indicates the appropriate parties memorialized the transactions with written contracts. Because the first element of equitable estoppel does not exist, Claimant is not able to rely on this exception and bypass the Statute of Frauds.

In sum, the three contracts simply cannot be regarded as merely evidence that Claimant's father acknowledged his repayment obligation. The Statute of Frauds prevents agreements to loan money from being enforced orally, and the written contracts that do exist were drafted by Claimant so as not to bind Debtor, nor were they ever modified to do so. The Statute of Frauds permits the Trustee to successfully object to this proof of claim. As such, the Court need not decide the accrual issue raised by the Trustee in the Statute of Limitations argument.

### Assuming the Obligation to Repay by Accepting the Benefits

■ Claimant states, "Patricia H. Gridley knew or ought to have known that borrowed money used to pay off the obligations of John N. Gridley, Jr.'s business or other joint obligations would directly or indirectly benefit her." Claimant concludes, then, that the estate is precluded from repudiating the repayment obligation. If a party voluntarily accepts the benefits of a transaction, the acceptance is the same as consenting to all the obligations from the transaction "so far as the facts are known or ought to be known to the person accepting." S.D.C.L. § 53-3-5.

■ The real purpose of this statute is to prevent a party to a transaction from denouncing a contract as void while, at the same time, taking advantage of the benefits of the transaction. *Schnabele v. St. Joseph Church of Elk Point*, 61 S.D. 409, 249 N.W. 750 (1933). Claimant cites *Strom v. Buhkolz*, 73 S.D. 583, 46 N.W.2d 912

(1951), and *Dobbs v. Atlas Elevator Co.*, 25 S.D. 177, 126 N.W. 250 (1910), in support of her position. Those particular cases *are* examples of how this statute is applied. This case is not.

■ Claimant states, "Over the course of many years, the Gridley family as a whole, and Patricia H. Gridley individually, had shared in the benefits and success of John N. Gridley Jr.'s business." That may be true, but a family's acceptance of a wage earner's benefits is not the voluntary acceptance intended by S.D.C.L. § 53-5-3 to obligate family members to repay loans made to the business—even if the wage earner owns the business and even if the family members have knowledge of the business's loan transactions. Valley Bank is correct—it would be ludicrous to hold a spouse or even a child responsible for debts of another family member's business simply because the level of financial support increases at home due to an improved financial condition at the business.

Neither is there any proof that Debtor's enrichment was unjust, in that it was illegal so as to allow the claim to stand based upon contracts implied in law. *Ruzicka v. Conde Nast Publications, Inc.*, 733 F.Supp. 1289, 1301 (D.Minn.1990); *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn.1981); *Thurston v. Cedric Sanders Co.*, 80 S.D. 426, 125 N.W.2d 496 (1963); *Mahan v. Mahan*, 80 S.D. 211, 121 N.W.2d 367 (1963).

### The Agency Argument

Having determined Claimant's original theory of recovery does not support the proof of claim, Claimant's alternative theory of recovery is considered.

■ The creation of an agency relationship enables a person "to accomplish results through the services of others, thereby enlarging the scope of such person's activities." Henn, Harry G., *Agency, Partnership and Other Unincorporated Business Enterprises*, Ch. 1, at 2 (2d ed. 1985). An agency relationship is consensual in nature and is created when one person manifests an intention that another shall act for

him and the other consents to do so. *Restatement (Second) of Agency* § 1(1) (1958). The relationship is not necessarily contractual.

■■■ There are two basic ways to create an agency relationship. The first is an actual agency relationship which arises because of the manifestation the principal provides to the agent. An actual agency relationship can be created orally or in writing. There is no evidence in this case, however, to show that an actual agency relationship was created between Debtor and Debtor's spouse. The second method, known as an ostensible agency (apparent authority), arises because of the manifestation the principal provides to the third party. This type of agency can be created even though an agent may or may not have authority to act for a principal. Because the principal misleads a third party to believe that the agent is able to act for the principal, the third party, in good faith, believes the agent has authority to act. Henn, *Agency, Partnership and Other Unincorporated Business Enterprises*, at 48.

■■■ Since no actual agency was created, Claimant must show that an ostensible agency relationship was created between Debtor and Debtor's spouse due to manifestations Debtor provided to Claimant. Claimant did not provide sufficient evidence, however, to show that Debtor misled Claimant into believing that Debtor's spouse was acting on Debtor's behalf when money was loaned to assist the insurance business. Therefore, the Court is unable to conclude an ostensible relationship was created. And even if there was such a showing, Claimant did not, "in good faith[,] believe" or rely on such manifestation, since Claimant sedulously prepared promissory notes to be executed by her father on behalf of his business entity. Claimant emphasizes the agency argument by focusing primarily on how Debtor ratified her agent's/spouse's acts, yet there is no indication whatsoever that Debtor needed to "enlarge the scope of her activities" or wanted to "accomplish results" through the service of her agent/husband. And

without a finding that an agency relationship was ever established—either actual or ostensible—the agency argument fails.

## CONCLUSION

Three loan transactions between close family members form the basis for this proof of claim. Claimant relies on an equitable theory of recovery pursuant to S.D.C.L. § 53-3-5, which states, "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting." Claimant argues that because Debtor received "direct or indirect" benefits from money loaned used to assist her spouse's financially troubled business, this bankruptcy estate is now under an obligation to repay the loans inasmuch as Debtor knew about the existence of the loans and, in fact, was one of four family members who orally discussed and/or arranged the loans. The Court concludes, however, that the statute was not designed to create an obligation of debt repayment when someone like this Debtor may have received an indirect support benefit simply because she knew monetary loans were made to improve the financial condition of her spouse's business. Such statutory interpretation and application is too broad.

The facts and circumstances surrounding this proof of claim indicate that subsequent to any oral discussions or agreements the family members may have had regarding the loan transactions, they were not relied upon, since Claimant drafted written promissory notes and presented them to her father for execution on behalf of his business entity. The terms of the promissory notes do not bind Debtor. Neither do the facts suggest there was any actual or ostensible agency relationship created between Debtor and Debtor's spouse that would obligate Debtor to repay the loans.

The Court finds the Trustee has met the burden of going forward to meet and overcome the proof of claim by raising the Statute of Frauds argument against the claim. South Dakota's Statute of Frauds

provision will only enforce an agreement for the loan of money if it is in writing. S.D.C.L. § 53-8-2(4). Although Claimant sought to bypass this requirement under the Doctrine of Equitable Estoppel, the goal was not achieved. The Court also finds Claimant has not met the ultimate burden of persuasion, and the claim fails under Section 502(b)(1) of the Bankruptcy Code. The Trustee's objections are sustained, and the Trustee may submit an appropriate order.