**UNITED STATES of America, Plaintiff,**

v.

**FIRST DAKOTA NATIONAL BANK, Defendant.**

**No. Civil 93–4162.**

United States District Court,
D. South Dakota,
Southern Division.

Jan. 6, 1997.

Charles P. Hurley, U.S. Dept. of Justice, Washington, DC, for plaintiff.

Steven M. Johnson, Johnson, Heidepriem, Miner & Marlow, Sioux Falls, SD, for defendant.

## MEMORANDUM OPINION GRANTING JUDGMENT AS A MATTER OF LAW

KORNMANN, District Judge.

### INTRODUCTION

The plaintiff filed this action seeking to collect an unpaid tax liability owed by American State Bank ("American") from the 1981 tax year. First Dakota National Bank ("First Dakota") acquired American in 1988, agreeing to assume all liabilities of American, except for shareholder liabilities. At the time of the purchase, all concerned knew American's liabilities exceeded its assets. First Dakota acquired assets of American valued at $65 million. The Federal Deposit Insurance Corporation ("FDIC") agreed that the liabilities exceeded the assets and contributed $4,275,000.00 to First Dakota. This fact was recognized in *First Dakota Nat. Bank v. St. Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 805 (8th Cir.1993), where it was

also recognized, in accordance with the contract received in evidence in the present case, that First Dakota, as an additional condition of the merger, was obligated to seek reimbursement for losses allegedly caused by certain American officers. This Court takes judicial notice of the fact that First Dakota did recover $3,883,650.00 plus prejudgment interest from St. Paul Fire & Marine Insurance Company. Officers of First Dakota, including any officer who testified in the present case, knew of this recovery at the time of trial in the present case. First Dakota has thus received, in addition to a substantial amount of prejudgment interest and the assets of the failed bank, a total of $8,158,-650.00, less attorney fees and costs involved in the recovery from St. Paul. A dispute over $35,575.00 plus interest, the amount in controversy here, amounts to .0046% of $8,258,-650.00. This Court takes into account that First Dakota has obviously never sought rescission of the merger agreement or the purchase agreement. Consent which is not free is not void in South Dakota but only voidable and may be rescinded in the manner prescribed by the statutes on rescission. S.D.C.L. 53-3-2. Actions for rescission in South Dakota are governed by S.D.C.L. 21-12. Attempts to revise contacts are brought under S.D.C.L. 21-11. It is obvious that no such action has been brought as well since First Dakota continues to operate the former American facility.

First Dakota denied liability, claiming American had warranted to defendant that all tax returns had been completely and accurately filed, that all taxes had been paid, and that there was no pending or threatened litigation or any proceeding which would result in any material or adverse change in the assets of American. At the time of the purchase, American was being audited by the Internal Revenue Service ("I.R.S."). Because of extensive losses in past years, it was expected by all those involved in the merger and even by the I.R.S. agents working on the audit that a tax refund would be forthcoming. American, seeking to take advantage of certain Internal Revenue Code benefits, made a tax election after 1981 but prior to the sale to First Dakota in 1988. This election resulted

in very favorable income tax benefits for American. No person involved in making the election, in filing or preparing the income tax returns or in making the decision to make the election was aware of an obscure Internal Revenue Code provision which imposed a price or downside in connection with having made the election. The election was much more favorable to the taxpayer than the downside; the downside ultimately resulted in additional income taxes being due from American for 1981 in the amount of $37,574.67. I.R.S. employees and American knew nothing about this downside until after the audit had been completed and one higher level I.R.S. employee made the downside known. This occurred after First Dakota's purchase of American in 1988. The import of the testimony of attorney David Knudson was that he had knowledge of the final audit result a month or two after the merger contract date of May 18, 1988, and that he promptly passed on such information to First Dakota. There is no evidence that American or its officers, directors, attorneys or agents did not act at all times in good faith.

This matter was tried to a jury on October 1 and 2, 1996. At the close of the defendant's case, plaintiff moved for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50. The Court ruled as a matter of law that First Dakota had agreed to assume the liability at issue, that the tax returns filed by American had been complete and accurate in all respects when they were filed, that as far as was known or should have reasonably been known at the time the warranties were made, all taxes had been paid, and that there was no pending or threatened litigation or any proceeding then known or which should have reasonably been known at the time the warranties were made. The jury was instructed accordingly. First Dakota claimed that an issue of fact remained as to whether First Dakota knew or should have known that American was being audited by the I.R.S. prior to the sale closing. The jury was permitted to decide whether, in the absence of First Dakota's knowledge, knowledge of the audit would have been material to First Dakota and to the purchase of American by First Dakota.

The jury returned a verdict for First Dakota. Plaintiff renewed its motion for judgment as a matter of law, both orally on the record following the verdict, and in writing, Doc. 60.

## DISCUSSION

Fed.R.Civ.P. 50(a) provides, in part:

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury.

The Court granted in part plaintiff's motion for judgment as a matter of law and was inclined to grant the motion in full but allowed the jury to return a verdict on the only possible factual issues remaining, reserving ruling pursuant to Fed. R. Civ. 50(b). This practice promotes judicial efficiency so that if the appellate court reverses the grant of a Rule 50 motion, the appellate court may simply reinstate the jury's verdict without remanding for a new trial. This practice is sanctioned by the Eighth Circuit. See Morfeld v. Kehm, 803 F.2d 1452, 1454, n. 2 (8th Cir.1986).

Fed.R.Civ.P. 50(b) specifically provides authority for the Court to later decide the motion or to entertain a renewed motion for judgment as a matter of law. In deciding a motion for judgment as a matter of law, the district court must resolve all factual issues in favor of the nonmoving party. Hopper v. Hallmark Cards, Inc., 87 F.3d 983, 987 (8th Cir.1996). In deciding whether there is sufficient evidence to support the jury's verdict, this Court must:

(1) consider the evidence in the light most favorable to First Dakota, (2) assume that all conflicts in the evidence were resolved in favor of First Dakota, (3) assume as proved all facts that First Dakota's evi-

dence tended to prove, and (4) give First Dakota the benefit of all favorable inferences that may reasonably be drawn from the facts proved.

*First Dakota Nat. Bank v. St. Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 809 (8th Cir. 1993) (First Dakota filed suit against American States Bank's surety under the bank's fidelity bonds; following a jury verdict for First Dakota, Judge Jones granted the surety's post trial motion for judgment as a matter of law on four of the twelve claims).

In the Eighth Circuit, a judgment as a matter of law is reviewed de novo and the standard used is the same as is to be used by the District Court. The question to be decided is whether, viewing the evidence in the light most favorable to the nonmoving party, "the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict." *Sip–Top, Inc. v. Ekco Group, Inc.*, 86 F.3d 827, 830 (8th Cir.1996) (citations omitted). First Dakota is not entitled to "the benefit of unreasonable inferences." *Id.* A reasonable inference is one "which may be drawn from the evidence without resort to speculation. When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate." *Id.* (citations omitted).

■ After reviewing the evidence in this case in accordance with the above standards, the Court finds that the jury verdict was erroneous as a matter of law. First Dakota failed to prove both that it had no knowledge of the audit and that such knowledge in any event would have been a material consideration in the transaction. In other words, it would have made no material difference to First Dakota if they had known that the audit was in progress. They would ultimately have gone ahead with the merger. The existence of the audit (which was unresolved and uncompleted) would not and could not have been material since it was not likely to have affected the conduct of reasonable persons, officers of First Dakota, as to the transaction. No reasonable person could or would have thought that the audit could possibly result in additional taxes being due, given the huge losses American had been experiencing

and the obscure nature of the tax code provision which ultimately resulted in the tax being due. The intention of First Dakota is further made clear by their failure to seek to reform the contract or seek rescission.

First Dakota relies on *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). *Gaudin*, however, does not mandate in this civil case that the jury be allowed to make a finding of materiality no matter how overwhelming the evidence is as to the question. As was stated in *U.S.v. Raether*, 82 F.3d 192, 194 (8th Cir.1996) the "lesson from *Gaudin* is that juries, not judges, should decide all the elements of a charged crime."

■ In addition, even assuming that the existence of the audit was material, that First Dakota did not know of the audit and that knowledge of the audit would have caused First Dakota to delay proceeding with the merger and acquisition (and there was no evidence that First Dakota would not have proceeded, the only evidence being that they would have awaited the final audit report), judgment as a matter of law is appropriate. The Court has given additional thought to the effect of the ruling at the close of all the evidence. Having concluded and found that First Dakota agreed to assume all liabilities, what difference could it make, as a matter of law, whether First Dakota knew or should have known of the tax liability or any other liability? The answer is none.

Any purchaser of an insolvent seller's assets who agrees to assume all liabilities must be very careful. If First Dakota intended to exclude unknown liabilities or material liabilities, it could and should have done so in the agreement. It did not do so. They took their chances and were well compensated for doing so.

First Dakota seeks to retain all the benefits of the merger agreement while exempting itself from one liability which they agreed to assume. This they may not do. S.D.C.L. 53–3–5. See also *Strom v. Buholz*, 73 S.D. 583, 46 N.W.2d 912, 914 (1951). First Dakota has never disaffirmed the contract. They have ratified it on a daily basis since 1988. They would no longer be permitted to seek

rescission against American or the F.D.I.C. *First State Bank of Sinai v. Hyland,* 399 N.W.2d 894, 898 (S.D.1987). See also S.D.C.L. 53–11–4 and S.D.C.L. 53–11–5. Yet they seek, in essence, although indirectly, to reform or partially rescind the contract as against the I.R.S., a non-party to the contract.

 First American claims, in effect, that a mistake of fact existed. Mistake of fact is defined at S.D.C.L. 53–4–9. The mistake may have been as to what the I.R.S. intended to do but there is no basis for relief when a mistake has to do with the future actions of a third party. *McDonald v. Miners & Merchants Bank, Inc.,* 310 N.W.2d 591, 593 (S.D.1981). If the mistake consisted of the lack of knowledge of the audit in progress, the mistake must have concerned a thing material to the contract and this, of necessity, depends upon all the facts and circumstances being considered as they then existed. Clearly, it is not such a mistake if it concerned only an incidental matter. It must be so fundamental in character that, because of the mistake, the minds of the parties did not meet. *Beatty v. Depue,* 78 S.D. 395, 103 N.W.2d 187, 191 (1960). In addition, a party may not be heard to complain of a unilateral mistake when that party fails to act with such care and diligence as would have been exercised by a person of reasonable prudence under the same circumstances. *Id.* First Dakota failed to so act and failed to prove it acted properly. Any claimed mistake of fact must go to the essence of the object of the contract. The court must be satisfied that but for the mistake the party would not have assumed the obligation from which the party seeks to be relieved. If and only if it can reasonably be said that the mistake involved had this effect is it a mistake material to the contract. *Id.* There is no evidence, let alone any reasonable evidence, to show that First Dakota would not have assumed the unknown tax obligation under all the circumstances. They would have assumed it and they did assume it. First Dakota was fully heard on all issues. There is no legally sufficient evidentiary basis for a reasonable jury to find for First Dakota. Their claimed defenses cannot be maintained as a matter of law. With the facts reasonably construed, First Dakota is liable to plaintiff.

Now, therefore,

IT IS ORDERED:

1. Plaintiff's motion for judgment as a matter of law, Doc. 60, is granted.

2. Judgment shall be entered in favor of plaintiff and against defendant in the amount of $37,574.67, plus interest, in accordance with S.D.C.L. 54–3–16, at the rate of 12% from February 12, 1990, the date the liability was assessed, to June 30, 1994, and at the rate of 10% from July 1, 1994, to October 2, 1996, with costs to be as assessed by the clerk.