**In re Donald James FRANK, Debtor.**

**No. 01–83748C–11D.**

United States Bankruptcy Court,
M.D. North Carolina.

March 2, 2005.

Donald James Frank, Southern Pines, NC, pro se.

### *ORDER*

WILLIAM L. STOCKS, Chief Judge.

Pursuant to the Memorandum Opinion entered contemporaneously herewith, it is ORDERED that Claim Number 12 filed by the Internal Revenue Services is DENIED as being superceded by Claim Number 14.

It is FURTHER ORDERED that Donald James Frank's Objection to Claim Number 14 filed by the Internal Revenue Service (Document No. 166), be and hereby is SUSTAINED IN PART and OVERRULED IN PART as follows:

A. The Internal Revenue Services's Claim Number 14 is reduced from the principal amount of $206,500.31 as of the petition date to the principal amount of $29,958.79, as of the petition date, plus any accrued pre-petition interest.

B. In all other respects, Donald James Frank's Objection to Proof of Claim Number 14 is OVERRULED.

## MEMORANDUM OPINION

This case is before the court for consideration of the objection of Donald James Frank ("Debtor") to the proof of claim filed by the Internal Revenue Service ("IRS") for $213,476.93 in Trust Fund Recovery Penalties assessed against the Debtor, as the responsible party of Continental Textile Corporation ("Continental"), for the failure of Continental to timely remit its trust fund tax obligations.[1] The Debtor asserts that the IRS's proof of claim should be entirely eliminated due to the IRS's purported failure to provide notice to him that he was subject to an assessment for the Trust Fund Recovery Penalty under 26 U.S.C. § 6672. Should the court decide that the Debtor is liable to pay a Trust Fund Recovery Penalty, the Debtor argues that the total amount of his liability should be significantly reduced on the basis that he was not a responsible party at all pertinent times, and that his

failure to cause Continental to pay its trust fund taxes was not willful.

The court held a hearing on November 9, 2004, in Greensboro, North Carolina, at which time the court took the objection under advisement and gave the parties an opportunity to submit post-hearing briefs. After considering the evidence presented, the argument and submissions of the parties, and the relevant law, the court is prepared to find that the Debtor did not carry the burden of showing a lack of adequate notice from the IRS that he was subject to the Trust Fund Recovery Penalty, that the Debtor was at all times a responsible party, and that there was a willful failure by the Debtor to cause Continental to timely pay some trust fund tax obligations, but not as to all of the trust fund taxes claimed by the IRS.

## I. BACKGROUND

The Debtor was the former president of Continental, its sole director, and between the Debtor, his spouse, and his children, the Debtor owned over 50% of Continental's stock. Continental is no longer an operating entity, but when it was active, it allegedly failed to fully meet five of its quarterly trust fund tax obligations from 1998 to 2000. Based on the purported deficiency, the IRS made two separate assessments against the Debtor, as the responsible party for Continental, for $213,476.93.[2]

---

1. Trust fund taxes generally consist of employment taxes that an employer withheld or should have withheld from employees' wages.

2. The amount of taxes the IRS contends are owed are divided by time periods as follows:

| Taxable Quarter | Amount Assessed | Form 941 Taxes Paid |
|---|---|---|
| 12/31/1998 | $ 3,071.83 | |
| 06/30/1999 | $ 26,493.31 | $45,270.07 |
| 12/31/1999 | $ 62,162.98 | $12,729.93 |
| 03/31/2000 | $ 59,156.74 | |
| 06/30/2000 | $ 55,615.45 | $40,064.95 |

| $206,500.31 | $98,064.95 |
|---|---|

The remainder of the amount set forth on the IRS's proof of claim, $6,976.62, is attributable to pre-petition interest.

Trust fund taxes are paid based on a completed Form 941, which also lists other tax obligations of an employer. The total of the amount paid on Continental's Form 941 tax obligations were applied by the IRS against the non-trust fund portion. (Document No. 169, p. 5). In contrast to the total of the Form 941 payments that the IRS acknowledges, the Debtor asserts that Continental's books and records reflect a total of

The Debtor acknowledged that he was the president of Continental before July 1, 1998, but on that date Jay Gillette became the president and the Debtor moved to Missouri to become a company salesman. Sometime in April 1999, however, Jay Gillette quit and the Debtor again took-over as the president in July 1999.

A few days after returning as president, the Debtor realized that Continental was delinquent in its trust fund taxes. The Debtor testified that he could not force Continental to repay all the delinquent trust fund taxes at once because Continental operated under an asset based lending formula whereby its lender swept its accounts daily and each new day Continental was limited in the amount of money that it could request from the lender based on a specific formula. Because the Debtor understood the nature of his personal liability for Continental's failure to fully pay trust fund taxes, the Debtor stated that he immediately implemented a company policy directing the chief financial officer that the first tax remittances were to be used to satisfy Continental's trust fund responsibilities—and once that obligation was satisfied—then the company could concentrate on paying its other tax obligations. Under that policy, Continental was able to make some twenty-one payments to the IRS between July 9, 1999 and September 17, 1999, totaling $76,043.73. Those twenty-one payments were made in the form of multiple checks sent to Centura Bank—not the IRS—and Centura Bank would then forward the amount of the payment electronically to the IRS. Following what he believed to be a proper procedure based on an IRS publication that he had read, the Debtor caused the memo line on each check, or the accompanying check stub, to state a designation that the payment was for a "Trust Fund Deposit."

Sandra Goins, a technical services advisor with the IRS, testified that the only way the IRS would know if a check was designated for the payment of a particular tax is if that check was sent to the IRS directly and that the IRS did not have any way of knowing that a taxpayer had designated a payment for a certain tax when that check was sent to a collecting bank. According to Ms. Goins, the only information that the IRS received from a bank's electronic transmission was the employer identification number, the quarter for which the deposit was received, and the amount of the check—the physical checks that Continental sent to Centura Bank were never actually seen by the IRS and the IRS was not aware of any designation. There was no evidence that the Debtor was aware of the limitations described by Ms. Goins. According to the Debtor, as he later learned, the IRS applied Continental's tax payments in whichever way it saw fit to its overall tax obligations.

The Debtor testified that later in the fall of 1999, and subsequent to the twenty-one payments that were made by check, Continental, consistent with the directives of the IRS, began to make all tax payments solely by electronic means. Pursuant to Con-

---

$160,822.08 was designated as trust fund deposits—some of which the IRS applied to taxes other than those represented on Form 941.

In its post-hearing brief, the IRS conceded that the Debtor did not owe any Trust Fund Recovery Penalty for the fourth quarter of 1998, which it had earlier assessed as being $3,071.83. The IRS also gave the Debtor a credit of $10,000.00 for the second quarter of 1999, which reduced the Debtor's total liability to $193,428.48, exclusive of interest. (Document No. 170, p. 35). Also, post-petition, the IRS applied $47,361.01 of the Debtor's entitlement to a refund against the Debtor's liability for the Trust Fund Recovery Penalty. The IRS acknowledges that the Debtor is entitled to deduct that amount from any liability the court deems is owing to the IRS. (Document No. 169, p. 17).

tinental's policy that the trust fund taxes be paid first, however, Continental's book and records reflect that the payments sent to the IRS electronically comprised payments on its trust fund taxes. From September 24, 1999 to October 26, 1999, the Debtor submits that Continental made $44,713.40 in electronic transfers to the IRS that should be treated as payment of trust fund taxes. Continental, however, never made any overt, contemporaneous effort to notify the IRS of the intended designation of the electronic transfers.

Eventually, the IRS acted on Continental's trust fund tax deficiency. In April 2000, it sent a revenue officer, Evette Davis, to investigate whether the IRS could hold the Debtor personally liable for Continental's trust fund tax delinquency. On April 18, 2000, Officer Davis interviewed the Debtor and had him complete a form entitled "Report of Interview with Individual Relative to Trust Funds Recovery Penalty." In that Report, the Debtor identified his mailing address as a post office box in Southern Pines, North Carolina. Apparently the Debtor attempted to explain to Officer Davis that Continental was paying its trust fund tax obligations as evidenced by the company policy he implemented, the designations noted on the checks sent to Centura Bank, and the designations that Continental made on its books and records for the electronic payments made in the fall of 1999. After that interview, as further evidence of Continental's intended designations, the Debtor sent two faxes to Officer Davis in June 2000. Those faxes included relatively contemporaneous excerpts from Continental's books and records reflecting that three of its recent electronic payments were designated as voluntary partial payments on its trust fund tax obligation and the faxes purportedly served to notify the IRS of how those payments were to be applied. The faxes correspond with three electronic payments made from May 5, 2000 to June 2, 2000, totaling $40,064.95.

Notwithstanding the Debtor's communications to Officer Davis, the IRS did not designate any payments that Continental made to its trust fund taxes. On December 20, 2000, the IRS attempted to notify the Debtor by mail that it had concluded that he was subject to personal liability for Continental's unpaid trust fund taxes. That notice concerned all unpaid trust fund taxes incurred prior to, and including, the quarter ending in March 2000, and the total amount of the penalty was $150,884.86. The statutory notice of the Trust Fund Recovery Penalty against the Debtor, however, was mailed to the Debtor at his street address in Southern Pines, North Carolina—not his post office box number—and one digit of the zip code was incorrect. The Debtor testified that it was impossible for him to receive mail at his street address and that he never received the notice.

Meanwhile, on February 16, 2001, the Debtor filed for bankruptcy in the Eastern District of Missouri. On March 28, 2001, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code in the Middle District of North Carolina and the Missouri petition was subsequently dismissed. In the Debtor's Chapter 13 filing, he listed the IRS as a contingent, priority, unsecured creditor in the amount of $130,000.00 for the unpaid withholding taxes of Continental. On April 30, 2001, the IRS assessed the Trust Fund Recovery Penalty against the Debtor in the amount of $150,884.86.

The Debtor's instant Chapter 11 case was filed on December 13, 2001, and his pending Chapter 13 case was subsequently dismissed. As in his Chapter 13 case, the Debtor scheduled the IRS as a contingent

holder of a priority unsecured claim for $130,000.00.

On January 28, 2002, the IRS attempted to notify the Debtor that he was subject to personal liability for additional unpaid trust fund taxes totaling $55,615.45, which were related to the quarter ending in June 2000. This notice was also mailed to the Debtor's street address in Southern Pines, North Carolina, but it suffered from the same infirmities as the first mailing—one digit of the zip code was wrong and the Debtor testified that he could not receive mail at his street address. The IRS mailed a duplicate copy of the notice to the Debtor's address on Mueller Road in St. Paul, Missouri. While the Debtor owned property located at that address in Missouri and previously had resided there, the Debtor denies ever receiving that notice. The Debtor's Missouri property was sold as part of this Chapter 11 proceeding on April 28, 2002. Later that year, on October 14, 2002, the IRS formally assessed the Debtor with a second Trust Fund Recovery Penalty in the amount of $55,615.45.

## II. TIMELINESS OF THE PROOF OF CLAIM

■ Debtor's argument that IRS claim number 14 was not timely filed depends upon whether the IRS withdrew claim number 12 prior to the filing of claim number 14 such that claim number 14 constituted a new claim or whether claim number 14 constitutes in amendment of claim number 12 which relates back to the previously filed and timely proofs of claim. Thus, the court must determine whether IRS effectively withdrew its proof of claim number 14.

The notice of the creditor's meeting in this case provided that governmental units had 180 days after December 13, 2001, to file a proof of claim. The IRS timely complied with this requirement by filing proof of claim number 7 on April 25, 2002. On October 1, 2002, the IRS amended its claim number 7 by filing claim number 9. In turn, the IRS amended claim number 9 on December 23, 2002, by filing claim number 11. On January 30, 2003, the IRS amended claim number 11 by filing claim number 12. The Debtor filed an amended objection to claim number 12 on April 22, 2004 (Document No. 137).

The Debtor's objection to the IRS's proof of claim number 12 was scheduled for hearing on June 24, 2004, which was then continued to September 30, 2004. Meanwhile, on August 26, 2004, the IRS wrote a letter to the clerk's office requesting that claim number 12 be withdrawn. On September 30, 2004, the court conducted a pretrial hearing rather than a hearing on the merits and, without deciding whether claim number 12 had been withdrawn, entered an order which established a schedule for the IRS to file another proof of claim, for the Debtor to file an objection to any additional claim filed by the IRS and scheduling a further hearing on November 9, 2004. Subsequently, the IRS filed proof of claim number 14 within the deadline set by the September 30 order. In the Debtor's objection to that claim, however, the Debtor argued, in part, that claim number 14 was untimely filed inasmuch as it did not amend claim number 12 and the claims bar date had passed in May 2002. The Debtor did not advance that argument at the November 9, 2004 hearing, and did not argue that point in his post-hearing brief; rather, the Debtor specifically stated that he "has requested that this Court determine the amount of any assessment that should be levied against the Debtor as an allowed Claim in this

case." (Document No. 172).[3]

In its post-hearing brief, the IRS now argues that its claim number 12 was withdrawn, the court's Order for it to submit a new proof of claim was an implicit approval of its withdrawal, and that its proof of claim number 14 should be denied as untimely. The IRS stated at the hearing that it did not believe that a denial of its claim in the Debtor's bankruptcy would prejudice its rights against the Debtor on the basis that it believed its claim to be excepted from the Debtor's discharge under 11 U.S.C. § 523(a)(1).

■ Pursuant to Fed. R. Bankr.P. 3006, after a debtor objects to a filed proof of claim, the creditor asserting that claim is only entitled to voluntarily withdraw it by filing a notice of withdrawal and that withdrawal is not effective except on order of the court after "notice to the trustee or debtor in possession ...." The successful withdrawal of a claim under Rule 3006 "renders the withdrawn claim a legal nullity and leaves the parties as if the claim had never been brought." *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir.1995). "The plain language of Bankruptcy Rule 3006 establishes bright-line tests marking the termination of a creditor's 'otherwise unfettered right voluntarily and unilaterally to withdraw a proof of claim.'" *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid–Atlantic Handling Systems, LLC)*, 304 B.R. 111, 123 (Bankr. D.N.J.2003) (citation omitted).

A review of the record reveals that the IRS never effectively withdrew proof of claim number 12. The IRS sent a letter of withdrawal to the bankruptcy court and copied the Debtor on the letter. No notice of that withdrawal was noted on the docket

sheet in this case and the letter of withdrawal was never set for hearing—tentative or otherwise. Likewise, the scheduled September 30, 2004 hearing on the debtor's objection to claim number 12 was originally intended to be a hearing on the merits of claim number 12—not a determination of the merits of the IRS's notice of withdrawal. At no time on September 30, 2004, or on November 9, 2004, did the IRS make an oral motion in open court to withdraw proof of claim number 12. Without ever having the notice of withdrawal explicitly brought before it, the court could not have officially approved or disapproved of the notice. Accordingly, claim number 12 was not withdrawn prior to the filing of claim number 14. The court therefore will treat the IRS's proof of claim number 14 as amending its claim number 12 and the court will disallow claim number 12 as being superceded.

## III. BURDEN OF PROOF

■ Fed. R. Bankr.P. 3001(f)—which modifies the Federal Rules of Evidence in bankruptcy proceedings—dictates that a proof of claim is *prima facie* evidence of the claim's validity and amount. On objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991) (citation omitted). A party objecting to a proof of claim has the burden of going forward to "meet, overcome, or, at minimum, equalize the valid claim." *FDIC v. Union Entities (In re Be–Mac Transport Co.)*, 83 F.3d 1020, 1025 (8th Cir.1996) (quoting *In re Gridley*, 149 B.R. 128, 132 (Bankr.D.S.D.1992)). Ordinarily, once the burden of overcoming the *prima facie* va-

---

**3.** The Debtor's confirmed Chapter 11 plan provides for a cash payment of $25,000.00 on any allowed claim of the IRS, with any re- maining amount of the claim to be paid by periodic payments over a period of six years.

lidity of the proof of claim is met, the ultimate burden of persuasion always rests on the claimant by a preponderance of the evidence consistent with the general rules of civil litigation. *Id.* However, because of the nature of the claim now before the court, the usual rule regarding the ultimate burden of persuasion is not applicable.

■■■ In the context of an assessment against a corporate officer for a Trust Funds Recovery Penalty under 26 U.S.C. § 6672, the corporate officer bears the burden of proof by a preponderance of the evidence that the officer is not liable for the penalty. *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (placing the burden of proof in a tax collection case on the taxpayer); *United States v. McCombs,* 30 F.3d 310, 318–19 (2nd Cir.1994) ("In allocating the risk of nonpersuasion to the taxpayer in a case governed by section 6672, we are cognizant that the government is the claimant in this litigation. Despite this fact, we ... have uniformly rejected the temptation to allocate the risk of nonpersuasion to the government ... to settle liability under section 6672 ...."); *Cline v. United States,* 997 F.2d 191, 194 (6th Cir.1993) ("If an assessment is made against a corporate officer [under 26 U.S.C. § 6672], the burden of proof by a preponderance of the evidence is on the officer to show that he was not a responsible person or that he did not act willfully."); *United States v. Pomponio,* 635 F.2d 293, 296 (4th Cir.1980) ("The Commissioner's determination of tax liability is presumptively correct and in cases involving section 6672 liability the courts generally have held that the burden is upon the taxpayer to establish that the Commissioner's determination was erroneous."). This court sees no reason to alter the standard when the Government is a claimant in a bankruptcy case. *See Ra-*

*leigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 21–22, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ("Congress of course may do what it likes with entitlements in bankruptcy, but there is no sign that Congress meant to alter the burdens of production and persuasion on tax claims .... [T]he Code makes no provision for altering the burden on a tax claim, and its silence says that no change was intended."); *In re Lee,* No. 96–1–0698, 1997 WL 639238 at *2, 1997 Bankr.LEXIS 940 at *5–6 (Bankr.D.Md. 1997) ("The taxpayer wishing to challenge the validity of the assessment [under 26 U.S.C. § 6672] bears the burdens of both production and persuasion.").

Therefore, in the context of a penalty assessed by the IRS under section 6672, the ordinary rules of shifting burdens in a claim objection proceeding do not apply; instead, the burden of disproving the IRS's claim always rests with the debtor/taxpayer by a preponderance of the evidence.

## IV. DISCUSSION

The Debtor advances three main arguments in an attempt to defeat or reduce the IRS's assessment of the Trust Fund Recovery Penalty against him: A) that the IRS failed to notify him that he was subject to personal liability for Continental's unpaid trust fund tax obligations before making its two assessments against him; B) that the Debtor was not a responsible party at all relevant times; and C) that the Debtor's failure to have Continental pay its trust fund taxes was not willful. Finally, the Debtor asserts that he is entitled to other miscellaneous credits against his potential liability, to which the IRS has conceded.

### A. Notice.

The Debtor asserts that the alleged failure of the IRS to notify him that he was subject to personal liability for Continen-

tal's unpaid trust fund tax obligations precluded the imposition of any assessment. The Section 6672 notice requirement states:

(b) Preliminary notice requirement.

(1) In general. No penalty shall be imposed under subsection (a) unless the Secretary notifies the taxpayer in writing by mail to an address as determined under section 6212(b) or in person that the taxpayer shall be subject to an assessment of such penalty.

(2) Timing of notice. The mailing of the notice described in paragraph (1) (or, in the case of such a notice delivered in person, such delivery) shall precede any notice and demand of any penalty under subsection (a) by at least 60 days . . . .

26 U.S.C. § 6672(b). *See also* 26 U.S.C. § 6212(b) (providing that notice is to be mailed to the taxpayer's last known address).

Having carefully weighed the evidence, the court is not persuaded that the Debtor carried his burden of proof that he never received notice that the IRS was going to impose the Trust Fund Recovery Penalty against him—or that the Debtor was not responsible for causing any existing infirmity.

 The mailing of a notice that the IRS intends to hold a taxpayer personally liable for the unpaid trust fund taxes of a corporation is accomplished by mailing the notice to the taxpayer's last known address under 26 U.S.C. § 6212, or pursuant to Section 6672(b), by informing the taxpayer in person. When determining a taxpayer's last known address, "the Commissioner is required to exercise reasonable care and diligence in ascertaining and mailing a . . . notice to the correct address . . . ." *Arlington Corp. v. Commissioner*, 183 F.2d 448, 450 (5th Cir.1950). *See also Cyclone Drilling, Inc. v. Kelley*, 769 F.2d 662, 664 (10th Cir.1985) (same). Generally, the Commis-

sioner may use the address on the return being audited as the "last known address" unless there is " 'clear and concise notification from the taxpayer directing the Commissioner to use a different address.' " *Goulding v. United States*, 929 F.2d 329, 331 (7th Cir.1991) (citations omitted), *cert. denied*, 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992). The benchmark test is whether the Commissioner sent the notice where the Commissioner reasonably believed the taxpayer wished to be reached. *United States v. Ahrens*, 530 F.2d 781, 785 (8th Cir.1976). Should the taxpayer notify the government of a new address, then the government must mail the notice to the new address. *United States v. Eisenhardt*, 437 F.Supp. 247, 250 (D.Md.1977) (informing an internal revenue agent that the taxpayer would be incarcerated in a federal penitentiary in Atlanta, Georgia was sufficient notice to the Commissioner of a new address). No requirement exists that the taxpayer receive actual notice; the burden is on the taxpayer to demonstrate that the notice was not sent to the "last known address." *Walsh v. United States*, 507 F.Supp. 808, 811–12 (D.Minn.1981) (finding that a change of address form filed with the post office and some correspondence with a district court did not establish actual notice to the IRS of a change of address).

 In this matter, the IRS sent the Debtor three notices by mail that the Debtor was liable for two different Trust Fund Recovery Penalties. While the Debtor stated that he did not receive any mail sent to his Southern Pines, North Carolina address because it was sent to a street address when he could only receive mail by a post office box, and that the first digit of the zip code was wrong, the Debtor never introduced any evidence that the IRS used an address that was different from what he had provided to it. The test

is not whether the Debtor received a mailing from the IRS, but whether IRS was exercising reasonable care and diligence in ascertaining and mailing a notice to the address where the IRS reasonably believed the taxpayer wished to be reached. As the cases cited above illustrate, the IRS is entitled to use the address used on the return being audited as the taxpayer's last known address, *Goulding*, 929 F.2d at 331, and without any evidence that the IRS used an address different from that which the Debtor had provided to it, the Debtor has failed to carry his burden of proof.

 Furthermore, the court is less inclined to believe that the Debtor had no notice that the IRS had assessed the Trust Fund Recovery Penalty against him because in April 2000 the Debtor was interviewed by a revenue officer regarding the IRS's investigation of whether or not to assess the Debtor with Continental's unpaid trust fund taxes. The form that the Debtor signed and apparently personally completed was entitled "Interview with Individual Relative to Trust Fund Recovery Penalty." While the Debtor did provide the revenue officer with another mailing address—a post office box—there is nothing particular about the facts of this case that would lead the IRS officer to conclude that the Debtor's previously provided street address was wrong; indeed, the street address was correct with the exception of one digit in the zip code. Providing the revenue officer with a post office box number for what is purportedly the same residence as the street address is not the type of clear and concise notification from the Debtor to the IRS that is required to charge the IRS with knowledge of a change of address. *Cf. Tadros v. Commissioner*, 763 F.2d 89, 92 (2nd Cir.1985) (finding that a letter sent to the IRS making a routine inquiry with the taxpayer's correct address on the letterhead was not

sufficient notice to the IRS of a change of address); *De Welles v. United States*, 378 F.2d 37, 39 (9th Cir.) (finding an oral notification to a revenue agent sufficient notice to the IRS of an address change when the taxpayer was moving from California to Mississippi), *cert. denied*, 389 U.S. 996, 88 S.Ct. 501, 19 L.Ed.2d 494 (1967); *Eisenhardt*, 437 F.Supp. at 250 (informing an IRS agent that the taxpayer was going to be incarcerated in a federal penitentiary was sufficient notice to the IRS of a change of address); *Wagner v. United States*, 473 F.Supp. 276, 279–80 (E.D.Pa.1979) (refusing to construe a verbal communication to the IRS to change an audit location—based on the fact that the address on the tax returns was only used in summer and on weekends—as clear and concise notice of a change in address even when followed-up by a written confirmation by an accountant). The court does not expect the IRS to be so hypervigilant as to be required to recognize an alteration of one digit of a zip code and the use of a post office box number for what is apparently the same street address—given in an interview to a revenue officer—as constituting clear and concise notice to the IRS of a different address. Additionally, the second notice that the IRS sent to the Debtor in January 2002 was sent to two different addresses. One was sent to the Debtor's Southern Pines, North Carolina street address (with an incorrect zip code digit) and the other was sent to the Debtor's residence in St. Paul, Missouri. The notice was sent in January 2002; the Debtor's Missouri residence was not sold until April of that year. The Debtor never satisfactorily explained why he could not receive mail at his Missouri address or what happened to the other mail that was sent there. The fact that the IRS sent the second notice to two separate addresses is further evidence that the IRS was exercising reasonable care and diligence in ascer-

taining and mailing the Trust Fund Recovery Penalty notice to the correct address where the IRS reasonably believed the taxpayer wished to be reached.

Accordingly, the court rejects Debtor's argument that the claim of the IRS should be disallowed on the ground Debtor did not receive proper notice from the IRS.

## B. Responsible Persons.

The Debtor seeks to avoid $26,493.31 of the total Trust Fund Recovery Penalty on the basis that he was not a responsible person during the second quarter of 1999 when that sum was assessed. Debtor relies upon the fact that he was not the president of Continental at that time.

■■■■ "Any person required to collect, truthfully account for, and pay over any tax imposed by this title ... shall ... be liable to a penalty ...." 26 U.S.C. § 6672(a). A "person" for purposes of the statute "includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). A "responsible person" for purposes of Section 6672 does not have to be a single individual, multiple "persons" in a corporation may be liable for the Trust Fund Recovery Penalty so long as they are "responsible persons." *Plett v. United States*, 185 F.3d 216, 219 (4th Cir.1999). Determining who is a "responsible person" is a question of status, duty, and control over corporate affairs. *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir.1979), *cert. denied sub. nom., Lattimore v. United States*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). The key element, however, in determining whether a party is a "responsible person" is whether that person has a duty to make the tax payments in light of that person's authority over a corporation's finances or

general decision making. *O'Connor v. United States*, 956 F.2d 48, 51 (4th Cir. 1992) ("The substance of the circumstances must be such that the officer exercises and uses his authority over financial affairs or general management, or is under a duty to do so, before that officer can be deemed to be a responsible person."). "Several factors serve as indicia of the requisite authority, including whether the employee (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees." *Plett*, 185 F.3d at 219. *See, e.g., Thosteson v. United States*, 331 F.3d 1294, 1299–1300 (11th Cir.2003) (finding a "responsible person" when a party helped incorporate the company, served as vice-president and president, owned varying levels of stock in the company, and possessed the authority to hire and fire employees), *cert. denied*, 540 U.S. 1105, 124 S.Ct. 1044, 157 L.Ed.2d 889 (2004); *Caterino v. United States*, 794 F.2d 1, 6 (1st Cir.1986) (finding that an individual who was a dominant force in piloting course of company and who had the power to substantially control whom company paid, was a "responsible person"), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987).

■■■ The Debtor testified that he was not the president of Continental during the second quarter of 1999 and that during this period he lived in Missouri and was acting as a company salesman. However, according to the Debtor's interview with Revenue Officer Davis, the Debtor admitted to being the chairman of the Board, the sole director, vice president, secretary, and treasurer of Continental. Between

himself; his spouse, and his children, the Debtor controlled about 50% of all outstanding stock and he had a controlling interest in Continental. At all times, Continental's interim president from July 1998 to July 1999 served at the will of the Debtor. Debtor's evidence was insufficient to show that he lacked control over Continental's payroll, that he did not determine which creditors should receive payment, that he did not have check writing authority, or that he did not participate in the day-to-day management of Continental. Indeed, in the interview with Officer Davis, the Debtor represented that—at all times—he had the power to hire and fire employees, sign checks and direct the payment of bills. Based on this evidence, the court is satisfied that the Debtor was a "responsible person" during the second quarter of 1999 and thus subject to the Trust Fund Recovery Penalty during that period.

## C. Willfulness.

The Debtor asserts that the IRS's assessment of the Trust Fund Recovery Penalty against him should be significantly reduced on the grounds that there was not a "willful" failure to pay with respect to a substantial portion of the trust fund taxes included in the IRS claim. The Debtor argues that he had a good faith belief that Continental had paid a large portion of its trust fund tax obligations because he had designated Continental's voluntary partial payments to be payments on its trust fund obligations.

■■■■■ "Any ... [responsible person] who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over ...." 26 U.S.C. § 6672(a). "Willful" is defined as being "[v]oluntary or intentional, but not necessarily malicious." *Black's Law Dictionary* 1630 (8th ed.2004). Only a "willful" failure to pay trust fund taxes is subject to penalty; Congress did not intend to impose liability without some degree of personal fault. *Slodov v. United States*, 436 U.S. 238, 254, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). As stated by the Fourth Circuit:

> Section 6672(a) does not "impose liability without personal fault"; the section requires a "willful failure" by the responsible person to collect, account or pay the required taxes. One must act "intentionally, conscientiously (sic) and voluntarily." The failure to pay trust fund taxes cannot be willful unless there is either "knowledge of nonpayment or reckless disregard of whether the payments were being made." The "intentional preference of other creditors" over the United States is "sufficient to establish the element of willfulness" under section 6672(a). The responsible person must know of or recklessly disregard the existence of an unpaid deficiency, however, for there to be an intentional preference.

*Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir.1992) (citations omitted). *See also Black's Law Dictionary* 506 (8th ed.2004) (defining "reckless disregard" as the "[c]onscious indifference to the consequences of an act ...").

■■■■■ "A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness." *Howard v. United States*, 711 F.2d 729, 736 (5th Cir.1983). "Willfulness" is generally not found where a responsible persons causes a corporation

to pay a sufficient sum to the IRS to cover trust fund tax obligations notwithstanding the fact that the IRS applied a portion of that payment to other tax deficiencies. *Watson v. United States*, 86–1 U.S. Tax Cas. (CCH) P9122 (E.D.Ky.1985).

■■■ The Debtor provided at least four categories of evidence to demonstrate that he believed that Continental was paying on its trust fund taxes and that the failure to pay the majority of the taxes claimed by the IRS was not "willful." First, the Debtor credibly testified that when he returned to Continental as president in July 1999, he implemented a company policy that Continental's trust fund taxes were to be the first taxes paid. Second, the Debtor introduced an excerpt from an employer's handbook, published by the IRS, giving instructions on how to make deposits using a Federal Tax Deposit coupon book.

The excerpt states that the employer is to deliver the payment along with a coupon to an authorized depository bank. It then states. "To help ensure proper crediting of your account, include your EIN, the type of tax (*e.g.*, Form 941), and tax period to which the payment applies on your check or money order." The Debtor testified that he and his chief financial officer, Bill Synder, discussed this language and determined that it gave Continental the ability to designate the tax to which any given partial payment would be applied.[4] Third, from July 9, 1999 to September 17, 1999. Continental sent the IRS numerous checks payable to Centura Bank totaling $76,043.73. The memo line of each check, or the accompanying check stub, plainly bears a designation of "Trust Fund Deposit."[5] Fourth, the Debtor presented two

4. In a General Litigation Bulletin issued by the IRS, the propriety of designated payments through such coupons is recognized:

Revenue Ruling 73–305, 1973–2 C.B. 43, sets forth the Internal Revenue Service's policy to apply a partial voluntary designated payments in accordance with the taxpayer's directions. Revenue Ruling 79–284, 1979–2 C.B. 83, extends the application of Revenue Ruling 73–305 to "withheld employment taxes and collected excise taxes where the taxpayer provides specific written instructions" regarding the application. *See also* Rev. Proc. 99–10, 1992–1 I.R.B. 11 (effective for FIDs required to be made after January 18, 1999). Revenue Procedure 84–58, 1984–2 C.B. 501, 1984 WL 260577, provides that when no assessment has been made, the Service will honor the taxpayer's designation of a payment. In turn, "if no designation is made by the taxpayer, the Internal Revenue Service will allocate partial payments of withheld employment taxes and collected excise taxes to tax, penalty, or interest in a manner serving its best interest." Rev. Rul. 79–284, 1979–2 C.B. 83, 1979 WL 51035; Policy Statement P–5–60 (February 29, 1993).

Generally, designations will be accorded their ordinary meaning unless they are too ambiguous and uncertain to serve as di-

rections to the Internal Revenue Service. To be effective, a designation must accompany the payment, contain the taxpayer's Employer Identification Number (EIN), the period and type of tax for which the payment is intended and, if desired, a detailed description of how the payment is to be allocated between the tax interest, and penalty. Thus, in a case of a voluntary payment sent directly to the Service, the designation should be made on the check itself. In a case of a Federal Tax Deposit, on the other hand the designation should accompany the FTD coupon ....

GLB 200017039 Bulletin No. 473, 2000 WL 1874048 (April 28, 2000) (footnote and citations omitted).

Generally, the IRS has permitted taxpayers to allocate payments among existing tax liabilities, at least when such payments are "voluntary." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 548, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

5. In fact, only $61,000.00 worth of checks were offered and admitted into evidence. The additional checks totaling $15,043,73, represented by Check Numbers 1030, 1032, 1035, 1036, and 1037 were not offered or admitted; rather, excerpts from Continental's books and records reflecting that these checks also contained trust fund tax designations

facsimile copies of Continental's books and records detailing three entries from May and June 2000 showing that Continental had applied $40,064.95 in its books and records as a payment on its trust fund obligations, which were provided to Officer Davis relatively contemporaneously with those payments. Moreover, the second quarter of 2000 did not terminate until the end of June of that year. Continental's May and June partial payments, and the Debtor's facsimile to Officer Davis, all occurred before the quarter expired.

Contrary to the assertions of the IRS, the court does not find that the Debtor's failure to follow-up to make sure that the IRS applied Continental's voluntary partial payments consistent with its purported designation equates to a finding that the Debtor willfully failed to cause Continental to pay its trust fund taxes, much less that the absence of a follow-up constituted "reckless disregard." A follow-up to ensure that payments were in fact being applied as the Debtor intended would have been provident, but the Debtor was apparently unaware of how the IRS was allocating Continental's partial payments until April 2000, when he was contacted by Officer Davis concerning the assessment of the Trust Fund Recovery Penalty against him. Also, Continental ceased to be a viable entity before the IRS notified the Debtor by mail on December 20, 2000, that he was subject to the Trust Fund Recovery Penalty notwithstanding his earlier asseveration to Officer Davis that Continental was in fact paying some of its trust fund tax obligations.

More problematic, however, are the electronic payments made from September 24, 1999 to October 26, 1999, totaling $44,713.40. Unlike the $76,043.73 in checks that Continental earlier issued to Centura Bank on its IRS obligations, for which each check bore a notation that the amount paid was for trust fund deposits, and unlike the $40,064.95 for which the Debtor provided copies of Continental's books and records in a failed attempt to convince Officer Davis that the sum was designated to Continental's trust fund taxes, neither Debtor nor Continental ever attempted to provide the IRS with any notice in the fall of 1999 that it was designating its electronic payments to its trust fund tax obligations. Indeed, the Debtor testified that Continental was not able to make such a designation when paying electronically. Unlike the other two groups of payments, the Debtor never caused Continental to undertake any colorable, overt act to put the IRS on notification of any such designation. Under the circumstances of this case, the Debtor's failure to do so amounts to a conscious indifference—or reckless disregard—by the Debtor as to whether Continental's trust fund taxes were being paid at a time when Continental was making payments to other creditors.

In short, the court finds that the Debtor "willfully" failed to cause Continental to pay some of its trust fund taxes—as much is admitted by the Debtor. The court, however, also finds that the Debtor operated on a subjective good faith belief[6] that Continental could and had effectively designated $76,043.73 in checks, and $40,064.95 in electronic transfers in May and June of 2000 as voluntary partial pay-

were offered into evidence in support of Debtor's testimony that such designations were on the checks.

**6.** The court makes no determination here on whether the Debtor's method of designation technically complied with IRS requirements. The court is only analyzing the Debtor's designation argument in the context of whether or not the Debtor's failure to cause Continental to fully pay its trust fund tax obligation was "willful."

ments on its trust fund tax obligations. Because the court is convinced that the Debtor had a good faith belief that Continental was paying on its trust fund taxes in that amount, the court finds that there was no "willful" failure by the Debtor to make payments to the extent of $116,108.68 of the unpaid trust fund taxes. On the other hand, the court finds that the Debtor's failure to even try to notify the IRS of $44,713.40 in ostensibly designated electronic payments during the fall of 1999 amounted to a reckless disregard as to whether Continental's trust fund tax obligations were being paid during that time. The Debtor could not have reasonably expected the IRS to be bound by a purported designation when Continental did not undertake and effort to notify the IRS. The Debtor admitted to causing Continental to pay creditors other than the IRS during this period making the failure to pay Continental's trust fund taxes during this period willful.

### D. Miscellaneous.

The Debtor asserts and the IRS concedes that he is entitled to a credit for: 1) $3,071.83 for the fourth quarter of 1998 based on a previous over-payment; 2) $10,000.00 which was misapplied by the IRS, and 3) $47,361.01 for the Debtor's personal income tax overpayments which were seized by the IRS pursuant to a setoff. The claim of the IRS therefore should be reduced by these additional amounts.

### V. CONCLUSION

Accordingly, the court finds that the IRS never effectively withdrew its proof of claim in this matter. Additionally, the court finds that no procedural "notice" bar exists in this matter since the Debtor failed to prove that the IRS's notices were deficient. Likewise, the Debtor failed to carry his burden to show that he was not a "responsible person" subject to the Trust Fund Recovery Penalty at all pertinent times. On the other hand, the Debtor sufficiently demonstrated that he did not "willfully" fail to pay Continental's trust fund tax obligations to the extent of $116,108.68. Combined with applicable credits conceded by the IRS, totaling $60,432.84, the Debtor has successfully objected to the amount owed by the Debtor on claim number 14 and the court will reduce the amount of that claim from the principal amount of $206,500.31 to $29,958.75 as of the petition date, plus appropriate pre-petition interest on the reduced amount of the claim.

This memorandum opinion constitutes the court's findings of fact and conclusions of law. A separate order shall be entered contemporaneously herewith pursuant to Fed. R. Bankr.P. 9021.